**Nos. 24-2009, 24-2150**

# United States Court of Appeals for the First Circuit

ANTONIO RAMOS CRUZ, *Petitioner - Appellee*,
JUAN CARLOS MELÉNDEZ-SERRANO, *Petitioner - Appellee*,

*v.*

LORRAINE MARTINEZ ADORNO, *Warden*;
LOURDES GOMEZ-TORRES, *Sec'y of Justice*, *Respondents – Appellants*,
ANA ESCOBAR-PABÓN, *Sec'y of P.R. Dep't of Corr. and Rehab.*, *Respondent*

Appeal from the U.S. District Court, District of Puerto Rico

## APPELLEES' MOTION FOR SUMMARY DISPOSITION

Appellees Antonio Ramos-Cruz and Juan Carlos Meléndez-Serrano—like José Luis Latorre, José Caro-Pérez, Nelson Ruiz-Colón, and Nelson Ortiz-Álvarez—were wrongfully convicted by ex-prosecutor Andrés Rodríguez-Elías. Decades later, modern mitochondrial DNA testing of crime-scene hairs secured state post-conviction relief and vacatur of the convictions. But a divided appellate court equated that scientific evidence with pseudoscientific hair-viewing by microscope and reversed. Appellees applied for federal habeas relief, and the District Court issued an 80-page opinion holding that the state-court judgment suffered unreasonable factual determinations. The Commonwealth Respondents, now Appellants, seek reversal but do not meaningfully engage the District Court's reasoning—let alone provide any basis to find error in granting relief. Summary affirmance is warranted.

**BACKGROUND**[1]

## I.    Factual Background

This matter originated from a prosecution for the murders of Haydée Teresa Maymí-Rodríguez and her two children. AD151. In February 1992, a jury convicted Appellees of first-degree murder "after a ten-day trial revealed, *inter alia*, that the Puerto Rico Police Department failed to preserve critical evidence and contaminated the crime scene, the murder weapon abruptly appeared at Teresa's estranged husband's home [Eduardo Morales-Colberg] months after the triple homicide,  and two eyewitnesses [José and Bárbara Martínez] recanted their initial statements to police following a nine-hour interview at the  [PRDOJ] and threats of prosecution." AD151-AD152. Relevant factual background can be found at AD151-AD202.

Appellees have always maintained their innocence.

## II.    Procedural Background

The Puerto Rico Supreme Court affirmed on direct appeal in 1999. AD202.

In 2003, Appellee Meléndez filed a Spanish-language pleading that the district-court clerk docketed as a § 2254 petition. AD203; No. 03-cv-1050. A magistrate judge denied Meléndez's appointment-of-counsel request, "incorrectly ordering **him** ... to obtain and submit copies of the relevant post-conviction dispositions issued

---

[1] Citations: Appellants' Brief ("AB"); Addendum ("AD"); Appendix ("A").

by the Puerto Rico appellate courts from his prison cell." AD203. Though it was the Commonwealth's responsibility to produce the record, when the record was not produced, the magistrate "incorrectly" "recommended that the Court dismiss Meléndez's section 2254 petition for 'failure to prosecute.'" AD204. The judge adopted the recommendation, dismissing "with prejudice." AD204-AD205.

In 2011, Ramos and Meléndez moved a Court of First Instance ("CFI") for a new trial based on "serological analysis of hairs recovered from" the victim's underwear, which "excluded Meléndez and Ramos as the donors." AD205. This motion was denied as explained at AD205-AD207.

In January 2016, "the Puerto Rico legislature enacted the Post Judgment DNA Analysis Act," enabling mitochondrial DNA analysis of the above-mentioned crime-scene hairs. AD206-AD207. Appellees sought state post-conviction relief under P.R. R. Crim. P. 192.1, based on those results, which "'irrefutably reveal[ed] that the pubic hairs collected from the panties belonging to Ms. Maymí do not belong to either of the two men unjustly convicted of this crime, whose motive was sexual assault and that, consequently, they are excluded as the murderers of Ms. Maymí and her two children.'" AD207-AD208.

The CFI granted the Rule 192.1 motion, ordered a new trial, AD208, and ordered both men released from custody, *see* AD142.

The PRDOJ appealed. A Puerto Rico Court of Appeals ("PRCOA") panel disagreed 2-1 with the proposition that mtDNA is more credible than hair comparison despite explicit expert "testimony that the mtDNA test is 'more convincing.'" AD208. The panel reversed the CFI, AD208, and "ordered that Meléndez and Ramos be 'remanded to the appropriate penal institution,'" AD142. The Puerto Rico Supreme Court denied discretionary review. AD208-AD209.

### A.    The District Court's Opinion and Order

In Appellee Ramos's case, No. 20-cv-1589, the District Court denied a motion to dismiss, rejecting affirmative defenses raised in the motion. A298-A340. After Appellants filed multiple non-compliant answers, *see* ECF Nos. 70, 87; *see id.* ECF No. 125 at 5-9, an answer was filed that made no specific affirmative-defense allegations besides generic claims that Ramos's petition was untimely. *See id.* ECF No. 173 at 26. It made no specific objections to the District Court's order applying equitable tolling to excuse a 15-day delay by Ramos in filing.

Appellants raised no timeliness defense against Meléndez's petition, which was filed around the same time, *see* No. 20-cv-1588 ECF Nos. 41, 51, 68, but was initially dismissed, resulting in an appeal in which this Court ordered the petition reinstated, AD133; *see* Judgment, *Meléndez-Serrano v. Rivera-Juanatey*, No. 22-1316 (1st Cir. May 3, 2023). Before remanding, the Commonwealth was ordered to show

cause why the matter should not be summarily vacated. Show-Cause Order, No. 22-1316. Respondents raised no jurisdictional issue, and this Court detected none. Response, No. 22-1316.

While Appellees had petitioned for relief in 2020, Appellants-occasioned delays deprived the District Court of the record it needed until 2024. For nearly four years, Appellants failed to tender compliant answers, failed to lodge the state-court record, *see* No. 20-cv-1589 ECF No. 102 at 1-5, ECF No. 125 at 13-17, and pursued an unmeritorious appeal when Appellants' own deadline malfeasance prompted Ramos's pre-adjudication release in 2023, *see id.* ECF No. 127; Judgment at 2, *Ramos-Cruz v. Emanuelli-Hernández*, No. 23-1725 (1st Cir. Nov. 7, 2023).

Both men now live in the community with their spouses.

The opinion granting relief—substantively identical in both cases—carefully elucidates the basic failure of the PRCOA judgment: microscopic hair comparison is junk science and no substitute for mtDNA analysis, which excluded Appellees from every piece of physical evidence and traced the mystery hairs to the victim's own matrilineal line.

## B.    Appellants' Brief

Facing a cascade of wrongful convictions by ex-prosecutor Andrés Rodríguez-Elías, the Commonwealth has retained a private for-profit law firm to write

Appellants' brief. *See* Mot. to Disqualify, No. 24-2009. The retainer agreement does not require any firm lawyer take an oath as a special prosecutor, no background or conflict checks, and calls for nothing more than quarterly reports, not direct prosecutorial supervision. *Id.* at 16-20; Retainer Agreement, No. 24-2009. Nor have Appellants ensured the firm is not laboring under actual or apparent conflicts. Mot. to Disqualify at 20-25.A pending disqualification motion was denied without prejudice and deferred to the merits panel. Order, No. 24-2009.

Without disagreement from Appellants' counsel, Appellee Ramos argued that the firm's involvement or disqualification would shape what issues, if any, Appellants raised. Reply re: Disqualification at 6, No. 24-2009. Now that the firm has filed Appellants' brief, it is apparent that the delegation of prosecutorial duties has produced a brief that, among other deficiencies, asserts a timeliness defense against one co-defendant while conceding timeliness as to the other—a position no prosecutor operating under applicable ethics guidance would take. The resulting prejudice falls on two men wrongfully imprisoned from 1991 through 2017—and again from 2019 through 2023 (Ramos) and 2024 (Meléndez)—who have awaited vindication upon retrial since first ordered in 2017.

Appellants' brief raises three issues. None presents a substantial question, and each provides evidence that the involvement of a conflicted for-profit private firm in

an attack on a writ of habeas corpus granted to innocent petitioners threatens the very integrity of the judicial process. On the merits, Appellants complain the District Court should have shown greater deference to the divided state-appellate judgment and disagree with the conclusion that the PRCOA order suffered unreasonable factual determinations. These arguments are undeveloped, failing to amount to a substantial question.

**ARGUMENT**

## I.    Meléndez's Petition Is Not "Second or Successive."

Appellants contend the District Court lacked jurisdiction over Meléndez's petition because it is "second or successive" under § 2244(b). AB27-AB33. Not so. First, as the District Court correctly concluded, the state post-conviction proceedings produced a new intervening judgment under *Magwood*, and the petition is the first federal challenge to that judgment. AD141-AD144. Second, the mtDNA-based claims raised here—unavailable before 2016—could not have been presented in the earlier federal proceeding, placing them outside § 2244(b)'s reach. AD144-AD149. Last, though left unreached below, this Court may affirm on the alternative ground that Meléndez's 2003 federal case never resulted in an "on the merits" adjudication capable of triggering § 2244(b)'s bar. *See* AD129 n.2. On each ground, Appellants' opening brief fails to engage the District Court's reasoning or the governing legal

framework, resulting in waiver. No substantial question is presented. *See* 1st Cir. R. 27.0(c).

AEDPA permits state prisoners to file one § 2254 petition challenging a judgment of conviction and establishes a gatekeeping regime governing the filing of "second or successive" § 2254 petitions. *Stewart v. Martínez-Villareal*, 523 U.S. 637, 641 (1998). Congress did not define "second or successive," and the Supreme Court has cautioned that the term "is not self-defining." *Panetti v. Quarterman*, 551 U.S. 930, 943 (2007). It is "well-settled" that the term "does not simply 'refe[r] to all § 2254 applications filed second or successively in time.'" *Magwood v. Patterson*, 561 U.S. 320, 331-32 (2010) (citation omitted). Nor is a petition "second or successive" when it attacks a new or intervening judgment authorizing custody, even when "the claim was or could have been raised in an earlier petition challenging the prior judgment." *Id.* at 338-39

### A. Appellants' *Magwood* Challenge Presents No Substantial Question.

### 1. Appellants Have Waived Their *Magwood* Argument.

"The first task of an appellant is to explain … why the district court's decision was wrong." *Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015). When an appellant fails to do so, the claim is waived. *Id.* And "it is axiomatic that presenting the exact same 'argument' that the district court rejected, without more, falls short." *Meek v. Martin*, 74 F.4th 1223, 1276 (10th Cir. 2023) (citation omitted).

Appellants' brief leaves the District Court's *Magwood* analysis largely unaddressed. The District Court examined how courts have applied *Magwood* and explained why the Rule 192.1 proceedings, having vacated the convictions, produced a new judgment for federal habeas review. Appellants never acknowledge the caselaw relied on, do not argue the District Court misread it, identify no contrary precedent, or cite any authority directly supporting their theory that the proceedings in state court failed to generate a new judgment. "[I]t is not merely enough to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *Am. Bd. of Internal Med. v. Salas Rushford*, 114 F.4th 42 (1st Cir. 2024) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)). Litigants must "spell out" their "arguments squarely and distinctly" in a manner that "provides analysis or presents legal authority directly supporting their claim." *Rinsky v. Cushman & Wakefield, Inc.*, 918 F.3d 8, 17 (1st Cir. 2019) (cleaned up). Because Appellants never engage the District Court's reasoning or develop a supported theory explaining why that reasoning is incorrect, their *Magwood* challenge is waived. *See DiMarco-Zappa v. Cabanillas*, 238 F.3d 25, 34 (1st Cir. 2001).

### 2. Even Setting Aside Waiver, the *Magwood* Argument Fails on the Merits.

Even if the issue must be reached, this case turns on a straightforward fact: the 1992 judgment was vacated. When the CFI granted Meléndez relief, it vacated the 1992 judgment and ordered a new trial pursuant to Puerto Rico Rule of Criminal Procedure 192.1. A3736-A3748. Puerto Rico law is explicit about the consequence of granting a Rule 192.1 motion: "the court shall vacate [the judgment] and set it aside and shall order that the petitioner be released, or it shall render a new judgment, or shall grant a new trial, as it may deem proper." P.R. Laws Ann. tit. 34, § 34A, Ap. II, § 192.1.

The District Court found that, "[b]y granting Meléndez's Rule 192.1 motion, the [CFI] vacated and set aside the 1992 judgment." AD142. Appellants do not challenge that finding; they concede it. *See* AB24. Once vacated, the 1992 judgment no longer authorized confinement. Meléndez was released and resumed life with his wife for ten months while the Commonwealth appealed. AD142. In March 2019, the PRCOA vacated the new-trial grant and entered a judgment ordering Meléndez "to be immediately remanded to the appropriate penal institution." A239. That judgment is therefore the operative custody-authorizing judgment.

Under *Magwood*, a habeas petition is not "second or successive" when it is the first challenge to a new judgment authorizing custody, "regardless of whether the

claim was or could have been raised in an earlier petition challenging the prior judgment." 561 U.S. at 338-39. Because the present petition is the first federal challenge to the judgment restoring Meléndez to custody following vacatur, § 2244(b)'s gatekeeping requirements do not apply. *See id.* ("[T]he existence of a new judgment is dispositive").

Appellants' rejoinders—that the 2019 judgment is not "new" (1) because it issued absent a formal resentencing and (2) because the original crimes and sentences remained unchanged (AB31)—lack merit. *Donovan v. Massachusetts Parole Board* held that a new *Magwood*-qualifying judgment was created even though it arose from appellate-court action, not a resentencing hearing. 162 F.4th 267, 274 (1st Cir. 2025). To Appellants' second point, a later-in-time state judgment constitutes a "new" judgment for *Magwood* purposes whether it modifies, replaces, or merely reinstates an earlier conviction. *Smith v. Williams*, 871 F.3d 684 (9th Cir. 2017) illustrates the point. After a state trial court vacated Smith's murder and attempted-murder convictions, the state supreme court reversed and remanded with instructions to reinstate those convictions by entering a second amended judgment. The Ninth Circuit held that the petition was not second or successive: "[i]t is of no moment that the Second Amended Judgment reinstated counts on which Smith had originally been convicted." *Id.* at 688 (emphasis in original). *King v. Morgan*, 807 F.3d 154, 157

(6th Cir. 2015) applied the same principle, holding that *Magwood*'s "judgment-based reasoning naturally applies to all new judgments, whether they capture new sentences or new convictions or merely reinstate one or the other."

### B. Appellants' Factual-Predicate Challenge Presents No Substantial Question.

Appellants contend that the District Court erred in concluding the petition is not "second or successive" under the factual-predicate exception. But Appellants' discussion occupies barely a page of briefing (AB31-AB32) and consists of conclusory assertions rather than legal analysis, ignoring both the District Court's reasoning and the controlling framework.

The District Court concluded the petition falls outside the second-or-successive bar; it recognized that "second or successive" is a term of art, determined that the ripeness principle applies when a claim could not have been raised in an earlier petition because its factual predicate had not yet arisen, and relied on authority recognizing that this principle is not confined to *Ford v. Wainwright*, 477 U.S 399 (1986) competency-to-be-executed claims. AD144-AD149 (citing, among others, *In re Apanovitch*, No. 23-3149, 2024 U.S. App. LEXIS 9838 (6th Cir. 2024)). Appellants do not mention, much less engage, that reasoning.

Worse, Appellants ignore *Anderson v. Divris*, 138 F.4th 625 (1st Cir. 2025), which rehearses the governing analytical framework. "Second or successive,"

*Anderson* explains, is given meaning by reference to "historical habeas doctrine and practice" and "the purposes of the federal habeas statutes." *Id.* at 630-31. Appellants provide zero analysis under that framework. Instead, Appellants assert categorically that the factual-predicate exception is limited to *Ford* competency-to-be-executed claims. AB31. *Anderson* forecloses that cramped reading. *See* 138 F.4th at 631 ("[T]he Supreme Court has not suggested that *Slack, Stewart, Panetti,* and *Magwood* represent the only circumstances in which a later-filed ... petition will be exempted from section 2244(b)(2)'s restrictions."). By failing to engage the governing framework, Appellants have waived this challenge. *Zannino*, 895 F.2d at 17.

Independent of waiver, Appellants' argument fails. AEDPA's successive-petition bar does not apply to claims that could not have been raised in an earlier habeas petition because they were not yet ripe. *See Panetti*, 551 U.S. at 943-47. The Court's reasoning rested on a principle broader than the at-issue *Ford* competency claim: the second-or-successive bar "does not apply to a claim that was not ripe at the time of the earlier petition." *Id.* at 945.

*Anderson* illustrates the exception is not so confined. This Court observed that the Supreme Court has never suggested that its decisions exempting later-filed petitions from the successive-petition bar—for instance, *Panetti*—represent an exhaustive list. *Id.* at 631. The circuits to have considered the question agree. The Second,

Third, Seventh, Eighth, and Ninth Circuits have permitted later petitions raising claims whose factual predicates arose only after the conclusion of the first federal habeas proceeding. *United States v. Buenrostro*, 638 F.3d 720, 725 (9th Cir. 2011) (collecting cases); *Benchoff v. Colleran*, 404 F.3d 812, 817 (3d Cir. 2005); *James v. Walsh*, 308 F.3d 162, 168 (2d Cir. 2002); *Crouch v. Norris*, 251 F.3d 720, 725 (8th Cir. 2001).

These principles are dispositive. Meléndez's mtDNA evidence did not arise until 2016, when Puerto Rico law first authorized DNA testing that produced results unavailable at the time of the 2003 federal habeas proceedings. Because the factual predicate for the claim did not exist in 2003, Meléndez could not have raised the claim in his earlier petition. Treating such petitions as successive would require petitioners to "file premature claims" or "run the risk" of "forever losing their opportunity for any federal review" — the result *Panetti* rejected. 551 U.S. at 945-46 (quoting *Rhines v. Weber*, 544 U.S. 269, 275 (2005)); *see also Brown v. Muñiz*, 889 F.3d 661, 671 (9th Cir. 2018) ("Treating unripe claims as second or successive is also inconsistent with AEDPA's purposes of promoting comity, finality, federalism, and judicial efficiency.").

### C.    Alternatively, the 2003 Proceeding Never Resulted in a Merits Adjudication Capable of Triggering § 2244(b)'s Bar.

Even apart from the factual-predicate exception, the record compels an independent basis for affirmance: the 2003 proceeding never produced the merits adjudication § 2244(b) presupposes. Although the District Court did not reach this issue, this Court may affirm on any record-supported ground. *See Kress Stores of Puerto Rico, Inc. v. Wal-Mart Puerto Rico, Inc.*, 121 F.4th 228, 244 (1st Cir. 2024).

A second-in-time petition is not "second or successive" where "the earlier petition terminated without a judgment on the merits."[2] *Pratt v. United States*, 129 F.3d 54, 60 (1st Cir. 1997). The 2003 proceeding falls within this principle—because the 2003 court was legally prohibited from even reading the Spanish-language pleadings Meléndez filed.

The Jones Act commands that "[a]ll pleadings and proceedings in the ... District of Puerto Rico shall be conducted in the English language." 48 U.S.C. § 864. The rule is categorical: "federal judges must not consider any untranslated

---

[2] In this context, a dismissal "on the merits" includes situations in which the district court does not actually reach the substance of the first petition but dismisses it on the basis of an incurable procedural defect—for example, as time-barred, procedurally defaulted, or barred by *Stone v. Powell*, 428 U.S. 465 (1976). *See, e.g.*, *Bottone v. United States*, 350 F.3d 59, 63 (2d Cir. 2004); *Thai v. United States*, 391 F.3d 491, 495 (2d Cir. 2004); *Villanueva v. United States*, 346 F.3d 55, 60 (2d Cir. 2003). None of these circumstances is present here.

documents placed before them." *United States v. Millán-Isaac*, 749 F.3d 67, 64 (1st Cir. 2014). "This means the district court could not consider the untranslated Spanish-language documents...." *United States v. Quiñones-Otero*, 869 F.3d 49, 53 (1st Cir. 2017) (citations omitted). This Court has "enforced the rule where the Spanish language document or matter is key to the outcome of the proceedings in the district court." *Puerto Ricans for Puerto Rico Party v. Dalmau*, 544 F.3d 58, 67 (1st Cir. 2008). The rule was well-settled in 2003; by then, it was "clear, to the point of perfect transparency that federal court proceedings must be conducted in English." *United States v. Rivera-Rosario*, 300 F.3d 1, 5 (1st Cir. 2002).

The District Court's unchallenged findings establish that Meléndez's 2003 filings were submitted almost exclusively in Spanish. AD129 n.2. The document construed as a "complaint," a form habeas petition, was filled out entirely in Spanish, 03-cv-1050-PG, ECF No. 2, and with one exception,[3] every subsequent filing was a handwritten Spanish-language letter, *see id.* ECF Nos. 4, 9, 12, 16. Because these filings were untranslated, the court "could not have identified the causes of action or addressed the arguments." AD129 n.2.

Further, the 2003 court inverted the burden established by Rule 5 of the Rules Governing Section 2254 Cases by ordering the petitioner, not the Commonwealth,

---

[3]  ECF No. 5

to furnish the state-court record. 03-cv-1050-PG, ECF No. 8. And, when Meléndez could not produce records the law never required him to obtain, the court dismissed the case for "failure to prosecute." *See id.* ECF No. 14.

Appellants challenge none of these factual findings and identify no legal error in the District Court's analysis, resulting in waiver. *See Sparkle Hill, Inc. v. Interstate Mat Corp.*, 788 F.3d 25, 29 (1st Cir. 2015). The unchallenged conclusions are now binding. *Cf. United States v. Wallace*, 573 F.3d 82, 88 (1st Cir. 2009) ("[F]indings and conclusions that are not appealed and are not related to the issues on appeal are treated as settled.").

In short, the 2003 court dismissed a petition it could not read for failure to comply with an obligation the law never imposed—none of which amounts to an on-the-merits adjudication. Appellants have identified nothing that would make this conclusion debatable.

## II.   Appellants' Timeliness Challenge to Ramos's Petition Presents no Substantial Question.

### A.   The Challenge Is Waived.

Appellants' timeliness challenge fails at the threshold because the defense was not preserved below. AEDPA's one-year limitations period under § 2244(d)(1) is an affirmative defense, "forfeited" unless "raised in a [respondent's] answer or an amendment thereto." *See Núñez-Pérez v. Escobar-Pabón*, 133 F.4th 33, 41-42 (1st Cir.

2025) (quoting *Day v. McDonough*, 547 U.S. 198, 202 (2006)). If a respondent asserts an affirmative defense "in a largely uninformative way," it is waived. *Id.* at 41-42. Claims not timely raised in district court are waived. *See United States v. Galindo-Serrano*, 925 F.3d 40, 49 (1st Cir. 2019).

In a motion dismiss, Appellants advanced two timeliness theories: first, that Ramos was required to file within one year of his direct appeal's affirmance in 1999, A155-A156 (arguing § 2244(d)(1)(A) bar); and second, that Ramos could have discovered the mtDNA evidence as early as 2012, rendering his petition many years late. A157-A158. Appellants never explained how Ramos would have obtained access to the mtDNA testing before the Post Judgment DNA Analysis Act was passed.

The District Court adjudicated Appellants' Rule 12(b)(6) claims. It determined that § 2244(d)(1)(A) was inapplicable, A325; found that Ramos, then a state prisoner, could not have conducted mtDNA analysis because the hair were in the Commonwealth's custody and he had no right to access them; and concluded that *de minimis* equitable tolling of 15 days was appropriate, A329-A337.

Appellants then abandoned the defense. When it came time for the parties to further brief the issues before the District Court, the Commonwealth filed a 33-page pleading that completely omitted the affirmative defenses Appellants now purport to raise. A3883-A3916. Appellants never returned to their specific challenges in their

answer or their briefs. A single affirmative-defense paragraph in the answer merely alleged the petition was "time barred pursuant to the statute of limitations established in AEDPA, 28 U.S.C. §§ 2244(d)(1)(A) and (D)." A1048.

And, while Appellants had claimed equitable tolling did not apply when they argued the petition exceeded the one-year due date by multiple years, they never challenged the District Court's conclusion that 15 days' *de minimis* equitable tolling was appropriate once the trigger date was identified. A329-A337. Nor did Appellants challenge the District Court's exhaustive, multi-factor equitable-tolling analysis in its order rejecting Appellants' dismissal bid.

The fact-based assertions Appellants now advance (AB35-AB41) were not preserved in their answer or merits briefing below and are waived.

### B.    Even If Not Waived Below, The Argument Is Waived on Appeal.

Even if the equitable-tolling argument survived, Appellants have waived it on appeal through undeveloped argumentation. Appellants' brief hints at disagreement with the District Court's 15-day tardiness determination but never argues clear error in any factual finding, waiving any claim that the District Court needed to justify anything more than *de minimis* tolling. Second, Appellants' brief signals no specific error under the abuse-of-discretion standard. In the habeas context, "abstract questions of law are reviewed de novo, findings of raw fact are reviewed for clear error,

and judgment calls receive a classically deferential reception." *Riva v. Ficco*, 615 F.3d 35, 40 (1st Cir. 2010). But the Appellants' brief doesn't express a wish to test "questions of law," "findings of raw fact," or "judgment calls." *Id.*

Tolling of AEDPA's non-jurisdictional § 2244(d)(1) deadline is an "equitable, often fact-intensive" inquiry that considers "in detail" each case's unique facts. *Holland v. Florida*, 560 U.S. 631, 653-54 (2010). Review of the District Court's determination is "highly deferential." *Delaney v. Matesanz*, 264 F.3d 7, 13 (1st Cir. 2001). And, where the inquiry immerses courts in "case-specific factual issues—compelling them to marshal and weigh evidence, make credibility judgments, and otherwise address" "multifarious, fleeting, special, narrow facts that utterly resist generalization," deferential review applies with full force. *U.S. Bank N.A. v. Village at Lakeridge, LLC*, 583 U.S. 387, 396 (2018) (citation omitted). The law, moreover, encumbers the losing party with the obligation to prove that any uncontested finding or inference "stinks like a five-week-old, unrefrigerated, dead fish." *United States v. Rivera-Carrasquillo*, 933 F.3d 33, 42 (1st Cir. 2019) (cleaned up).

Appellants' brief never argues under any specific abuse-of-discretion prong that reversible error occurred. The issue's perfunctory treatment provides an independent basis for deeming the argument waived. *Zannino*, 895 F.2d at 17.

**C.    Appellants' Inconsistent Timeliness Defense and Private Counsel's Unresolved Conflicts Independently Warrant Relief.**

Appellants raise no timeliness challenge against Meléndez, thereby conceding that his habeas petition was timely. Yet both men were tried together, sought relief at the same time, and raised the same mtDNA-based claims. There is no legal basis for the Commonwealth to assert a timeliness defense against one co-defendant but waive it as to the other under these circumstances. This situation illustrates why Ramos has sought to disqualify the private law firm representing Appellants here. *See* Mot. to Disqualify at 25-27; Mot. for Merits-Panel Referral of Mot. to Disqualify, No. 24-2009 (May 27, 2025). The notion that a prosecutor working under applicable ethics guidance would take such a position must be rejected.

Nor should the affirmative-defense challenge be entertained given the conflict issues related to the Commonwealth's delegation of its appeal to the firm. *See* Mot. to Disqualify Private Firm at 20-27. Allowing the private firm to brief the case while operating under unresolved conflicts—without adherence to the constitutional and ethical obligations binding public prosecutors—poses a serious risk of irreparable harm. If briefing goes forward, for instance, and the firm is later disqualified, any brief filed could be struck, causing further, unnecessary delay. Mot. for Merits-Panel Referral at 4-5 (collecting cases). And, if the firm continues under a cloud of conflicting loyalties, the integrity of the process itself may be compromised.

III.    **Appellants Present No Substantial Question on the Merits of the District Court's § 2254(d)(2) Determination.**

The District Court's 80-page opinion meticulously analyzed the state appellate court's decision in relation to the newly discovered mtDNA evidence and concluded that it rested on unreasonable factual determinations under § 2254(d)(2). AD105-AD122; AD213-AD230. The District Court made multiple specific findings: the state appellate court "repeatedly diminished the mtDNA analysis, failing to grasp the following fact: proof tending to exclude would-be rapists from a murder scene, particularly when sexual assault allegedly motivated the suspects in committing this offense, is relevant." AD120. "Testimony provided by the Martínez siblings [Bárbara and José] served as the sole evidence linking Meléndez and Ramos to the crime scene. No other circumstantial or physical evidence placed them inside Teresa's house in the early morning hours of June 26, 1989." AD116.

In turn, "[t]he mtDNA analysis performed on the hairs collected from Teresa's underwear exclude Meléndez and Ramos as the donors: The hairs originated from Teresa herself or a matrilineal relative." AD116. "Consequently, these results undermine critical testimony adduced at trial by Bárbara and José [Martínez]." AD116.

The state appellate court engaged in additional unreasonable factual determination by "fault[ing] the CFI for not considering certain testimony from the trial record, a conclusion based on a premise that has no support in the record." AD113.

Against this exhaustive analysis, Appellants' brief offers nothing that amounts to developed argumentation. It does not identify a specific legal error in the District Court's § 2254(d)(2) framework. It does not argue that any particular factual finding was clearly erroneous. And it does not explain why the District Court's reasoning was wrong on its own terms. Instead, Appellants merely express dissatisfaction with the District Court's conclusions, arguing that Appellees did not establish "how the mtDNA test rebutted the testimonies of witnesses that put them on [sic] the crime scene." AB44.

The balance of the brief fares no better. Appellants paste extended excerpts from the trial testimony by José and Bárbara Martínez (AB44-AB51) and large portions of the two-judge appellate order (AB56) but at no point confront the District Court's central finding: that the state court unreasonably discarded mtDNA evidence tending to exclude Appellees from the crime scene in a case where the prosecution's theory depended on a sexual-assault motive. If anything, Appellants' own selection of testimony—including José's account alleging a sexual-assault motive—underscores the failure the District Court identified: where ex-prosecutor

Rodríguez-Elías used the teens' testimony to argue Appellees were would-be rapists, the appellate court unreasonably discarded the scientific evidence excluding them from the murder scene.

Appellants' reliance on the appellate order's purported "careful study of the witnesses who performed the pubic hair analyses" (AB56) reveals that the brief's authors labor under the same misapprehension as the two judges who issued the unreasonable order: that scientific mtDNA analysis has the same effect as looking at hair under a microscope. AB60. No authority supports that proposition. The District Court identified this very conflation as a central flaw in the state court's reasoning.

Appellants' brief also settles on a claim that the jury verdict somehow supports its position because "the jury already knew of the existence of the hairs," "that they had not been analyzed," and "that no semen was recovered from the victim's underwear." AB56. This, of course, gives away the game. Ex-prosecutor Rodríguez-Elías had built the rape motive deep into the state's prosecution theory, leaving the jury with the possibility some quantum of physical evidence connected Appellees to the crime scene. Thus, where it was already known that law enforcement had "fail[ed] to preserve the crime scene" and that "the purported murder weapon" was discovered "at Morales' house  months after the murders," AD113, the jury's exposure to the pubic hairs without scientific mtDNA evidence proving that they

were either from the victim or someone matrilineally liked to her reinforces the factual failures in state appellate court's decision. Because Appellants never engage the District Court's § 2254(d)(2) analysis or identify any specific error in its reasoning, their merits challenge is waived. *Zannino*, 895 F.2d at 17.

## CONCLUSION

Appellants' brief presents no substantial question. The successive-petition challenge fails to engage the District Court's reasoning or controlling authority on each ground supporting its determination that Meléndez's petition is not "second or successive," nor does it challenge the factual findings that would compel a reviewing court to conclude that the 2003 proceeding never produced a merits adjudication. The timeliness defense against Ramos was abandoned below, is undeveloped on appeal, and its inconsistent assertion against only one of two identically situated co-defendants undermines its credibility. And the § 2254(d)(2) challenge amounts to restating the PRCOA's flawed reasoning without confronting the District Court's analysis, repeatedly conflating scientific mtDNA analysis with visual microscopic hair examination—the very error the District Court identified as central to the unreasonable factual determinations. This Court should grant summary disposition and affirm.

RESPECTFULLY SUBMITTED on March 27, 2025.

Counsel for Appellee
Juan C. Meléndez-Serrano:


*s/Juan F. Matos de Juan*
Juan F. Matos de Juan
USDC-PR 207605
255 Ponce de Leon, Suite 1210
Hato Rey, Puerto Rico 00917
Telephone: (787) 509-2335
E-Mail: matos@gsmr.net

Counsel for Appellee
Antonio Ramos-Cruz:


RACHEL BRILL
Federal Public Defender
District of Puerto Rico

*s/Franco L. Pérez-Redondo*
Franco L. Pérez-Redondo
Assistant Federal Public Defender,
Supervisor, Appellate Division
First Circuit Bar No. 1175955
241 F.D. Roosevelt Ave.
San Juan, Puerto Rico 00918
T. (787) 281-4922
E. Franco_Perez@fd.org

**CERTIFICATE OF SERVICE**

I **CERTIFY** that, on March 27, 2026, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

**S/FRANCO L. PÉREZ-REDONDO**
Assistant Federal Public Defender

---

**CERTIFICATE OF COMPLIANCE**

I **CERTIFY** as follows:

**1.** This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) (restricting motions to 5,200 words or less) because it contains 5,167 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f).

**2.** This motion complies with the typeface and style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6); it has been prepared in Microsoft Office 365 using a proportionally spaced typeface with a 14-point font.

**S/FRANCO L. PÉREZ-REDONDO**
Assistant Federal Public Defender